RADU MARIAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Marian v. Commissioner
Docket No. 4327-81.
United States Tax Court
T.C. Memo 1985-554; 1985 Tax Ct. Memo LEXIS 78; 50 T.C.M. (CCH) 1386; T.C.M. (RIA) 85554; November 6, 1985. Radu Marian, pro se. Lottie W. Cohen, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $3,470 in petitioner's Federal income tax return for 1978. The issues for decision are: (1) whether petitioner is entitled to a deduction for alimony payments; (2) whether he is entitled to a deduction for moving expenses; (3) whether he is entitled to a deduction for expenses attributable to certain rental property; (4) whether he is entitled to a deduction for a loss incurred in connection with that rental property; and (5) the amount of his gain on the sale of the rental property. Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time he filed the petition in this case, petitioner, Radu Marian, *81 was a resident of Los Angeles, California. He immigrated to this country from Rumania in 1964. He holds a degree from Northeastern University where he studied electrical engineering, and he is now a naturalized citizen of the United States. Issue 1. Alimony
FINDINGS OF FACT In 1970, after having been granted United States citizenship, petitioner made a trip to Rumania to visit his family. During this trip, he met a Rumanian woman whom he married and brought with him to the United States when he returned. The couple later separated, and, in 1976, they were divorced; on June 2, 1976, a probate court of the Commonwealth of Massachusetts granted petitioner's ex-wife custody of petitioner's minor child, a daughter, and ordered petitioner to pay his ex-wife $60 per week in alimony. In December of 1977, petitioner's ex-wife and child disappeared. Thereupon, petitioner filed a motion in the probate court in Massachusetts asking that he be granted custody of his daughter and relieved of his financial obligation to his ex-wife. The motion was granted on March 30, 1978. Shortly thereafter, thinking--correctly as it turned out--that his ex-wife might have taken the child and *82 gone to California, petitioner took time from his job in Massachusetts and went to California to find them. Once having done so, he sought and obtained recognition in California for the custody decree of the Massachusetts probate court, and he and his ex-wife entered into an agreement under which he was obligated to pay only child support. Late in 1978, petitioner moved to California to be with his daughter. OPINION On his 1978 income tax return, petitioner claimed an alimony deduction in the amount of $3,400 which respondent disallowed entirely. Petitioner has the burden of proving that he is entitled to the deductions that he claims. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a) [1]. With respect to the deduction he claims for alimony, petitioner has failed to carry that burden. Section 215 [2] allows a husband who is divorced to deduct payments made to his former wife under a decree of divorce if such payments are includable in the wife's gross income under section *83 71. Section 71(a) provides that a wife's gross income includes "periodic payments" received under a divorce decree or written separation agreement in recognition of the husband's legal obligations arising from the marriage. Section 71(b) provides, however, that payments which the decree or agreement designates as being for the support of the husband's minor children are not includable in the wife's gross income under section 71(a). Between March 30, 1978 and the close of his 1978 taxable year, petitioner had no obligation to make any payments to his ex-wife of the kind described in section 71(a). During so much of the taxable year as preceded March 30th, petitioner did not know his ex-wife's whereabouts. Furthermore, petitioner admitted at trial that the only payments he made to his former wife during 1978 were exclusively for child support, pursuant to the agreement he and she made in California after he had found her there. But petitioner does not argue that these payments for child support are deductible; he says that *84 the amount of the deduction in question represents expenses (for travel and for legal assistance) incurred in his attempts to find, and to gain custody of his child after his wife absconded. He realizes that these expenses do not constitute "alimony" within the strict meaning of the Code, but he feels strongly that they should be deductible, and he could not find a more likely category of expense on his return. Petitioner's story is a sympathetic one. It is clear, however, that the expenses he has sought to deduct cannot be brought within the definition of "alimony" contained in section 71(a). Therefore, we must sustain respondent's determination that the entire amount claimed by petitioner for alimony payments should be disallowed. Issue 2. Moving Expenses
FINDINGS OF FACT During 1977, petitioner was employed as an electrical engineer by a company located in Newport, Rhode Island. In January of 1978, he began working in the same capacity for a different company, this one located in Westboro, Massachusetts. At that time, pursuant to this change of employment, he moved from Newport to Allston, Massachusetts. He effected at least a part of the move with the aid of *85 a trailer which he rented for a day or so. He received $358 from his new employer in Massachusetts as reimbursement for moving expenses, and he worked as a full-time employee for the employer in Massachusetts for roughly 1 year before moving to California to be with his child. OPINION Petitioner claimed a deduction for moving expenses in the amount of $692 which he computed by reducing his aggregate moving expenses by the amount of reimbursement he received from his employer. That reimbursement was paid, he says, on the basis of a written estimate he supplied to his employer early in the year before he had completed the process of moving from Rhode Island; he had intended to supplement this estimate later on but neglected to do so when he became preoccupied with the disappearance of his ex-wife and child. Respondent disallowed the deduction for moving expenses entirely. In this instance, we think petitioner is entitled to the deduction he claims. Section 217(a) allows a deduction for expenses incurred in moving to a new principal place of work. This allowance is subject to two conditions provided in section 217(c): (i) the taxpayer's new principal place of work must be at *86 least 35 miles farther from his former residence than was his former principal place of work (or, if he had no former principal place of work, at least 35 miles from his former residence); (ii) the taxpayer must be employed on a full-time basis in the new location for at least 39 weeks of the 12-month period immediately following the move (unless one of the exceptions provided in section 217(d) applies). Again, petitioner has the burden of proving that he is entitled to the deductions he claims, this one under section 217. E.g., Merlino v. Commissioner,660 F.2d 415, 416 (9th Cir. 1981), affg. per curiam a Memorandum Opinion of this Court. [3]
We believe that petitioner did incur moving expenses, and such expenses amount to at least as much as he claimed on his return. It is well settled that if we are convinced that a deductible expenditure has been made in a case in which there is insufficient evidence as to the exact amount of that expenditure, our judgment as to the reasonableness of the amount claimed is an appropriate basis on which to decide whether a deduction for that amount should *87 be allowed. Rugel v. Commissioner,127 F.2d 393, 395 (8th Cir. 1942); Browne v. Commissioner,73 T.C. 723, 729 (1980). Westboro, Massachusetts is more than 35 miles from Newport, Rhode Island, and petitioner worked for his employer in Westboro for more than 39 weeks in 1978. Therefore, we think petitioner is entitled to the entire amount of the deduction he claims under section 217. Issue 3. Expenses Attributable to Rental Property
FINDINGS OF FACT In 1977, petitioner purchased a quadplex--a residential building consisting of four separate apartments--in Newport, Rhode Island. During that year, he occupied one of the apartments, and rented out the remaining three. When he moved to Massachusetts, in January 1978, he put the apartment that he had been occupying up for rent too, and contracted orally with a real estate firm in Rhode Island to manage the property in his absence. Though he had thus taken steps to insure that the property would be looked after, petitioner continued to play an active role in its management throughout the year in issue. For a time after he had moved to Massachusetts, he made weekly or bimonthly trips to Newport *88 to attend to matters concerning the quadplex. On some occasions during the year in issue, he advertised vacancies in the local newspaper. He paid commissions to at least one rental agent who had found tenants for him early in the year. And he paid for repairs and other maintenance as well as for utilities, insurance, and taxes. One of the apartments rented for $140 per month, one for $160, one for $200, and one for $240, but they were empty for most of the year. Petitioner's gross rental income from the property for 1978 was less than $2,500. OPINION On his return for the year in issue, petitioner showed a rental loss of $8,810. This loss represents the amount of gross rental income reported by petitioner net of $11,010 in expenses incurred in connection with the quadplex, including depreciation. The expenses were shown on petitioner's Form 4831 which was submitted with his 1978 return. Respondent disallowed the net rental loss entirely, i.e., he allowed the deductions claimed on petitioner's Form 4831 only to the extent of petitioner's gross rental income. Again, though petitioner has no records or cancelled checks to substantiate either his rental income or his expenditures *89 in connection with the quadplex, we are convinced, based on his testimony, that he did make payments of the kinds he claimed on his return. Some of the amounts claimed, however, seem to us to be questionably high in light of the paucity of rental activity during the year. We think it reasonable under the circumstances [4] to allow petitioner half of the amount he claimed for each of the following items on his Form 4831: advertising, auto and travel, cleaning, commissions, gardening, janitor and heating, legal and accounting, management fees, office supplies, enumerated repairs, and telephone. The remaining items claimed on petitioner's Form 4831, viz, insurance, interest, taxes and licenses, utilities, and depreciation, were conceded by respondent at trial, and therefore, will be allowed entirely.
*90 Issue 4. Loss Incurred in Connection with Rental Property
FINDINGS OF FACT Petitioner's quadplex was located in an economically depressed area of Newport. At the time petitioner moved to Massachusetts, the quadplex was only partially occupied--one or two of the apartments having tenants living in them. Each of the apartments, including the one petitioner had previously occupied, was furnished. There was a garage on the premises in which tools for gardening and for general maintenance were kept, and in which at least one piece of furniture, a water bed, was stored. During the periodic trips he made to Newport just after having moved to Massachusetts, petitioner began to notice that various things--furniture, appliances, decorations and tools -- had been taken from the apartments and the garage. Similar disappearances were noted over a period of months by employees or members of the real estate firm that petitioner had engaged to manage the property in his absence. The matter was reported to the police but the identity of the thief or thieves has never been established, nor has the stolen property been recovered with the exception of one ceramic piece which petitioner *91 eventually tracked to a former tenant who had abandoned one of the apartments early in 1978. It was petitioner's policy to require of his tenants that they sign a one-year lease and pay a security deposit. This policy was irregularly implemented, but petitioner did obtain a security deposit of $160 from a tenant who was living in one of the apartments at the beginning of the year in issue--the same tenant from whom petitioner later recovered the ceramic piece referred to above. When, in that same year, this tenant abandoned his leasehold, petitioner kept the security deposit. He cannot remember whether or not the security deposit is reflected in the amount of gross rental income he reported for 1978. The quadplex was insured against theft. Petitioner filed a claim, and supplied his insurer with a "partial list of stolen property" which is part of the record in this case. But the insurer refused to pay on the claim, taking the position that petitioner had removed the items in question himself. This was explained to petitioner over the telephone. There is no indication in the record of the basis on which the insurer formulated its position. OPINION Petitioner claimed a casualty *92 loss in the amount of $3,200 which respondent disallowed entirely. Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of a taxpayer who is an individual, this sweeping allowance is subject to section 165(c) which permits losses to be deducted by such a taxpayer only if they are incurred in a trade or business, a transaction entered into for profit, or are caused by fire, storm, shipwreck, other casualty, or theft. Sections 165(c)(1) through 165(c)(3). If property not connected with a trade or business or a transaction entered into for profit is damaged or destroyed by casualty or theft, the amount of the loss thus sustained is deductible only to the extent it exceeds $100. Section 165(c)(3). On the other hand, if property that is connected with a trade or business or a transaction entered into for profit is damaged by casualty or theft, the loss sustained is fully deductible. Section 165(c)(1). The amount deductible as a result of a theft loss is the lesser of the fair market value of the property stolen immediately before the theft or the taxpayer's adjusted basis in the property. *93 Sections 1.165-7(b) and 1.165-8, Income Tax Regs.
Petitioner treated his loss from theft as a loss under section 165(c)(3) rather than a loss incurred in a trade or business under section 165(c)(1), and he treated his aggregate loss as arising from a single theft. The $3,200 he claimed reflects the $100 nondeductible floor prescribed by the statute. At trial, the parties did not argue the question whether, assuming petitioner did sustain some deductible loss, it is properly characterized as a theft loss under section 165(c)(3). But it seems to us to be clear from the record that during the year in issue, petitioner was in the trade or business of renting apartments. Neither the fact that petitioner was also in the trade or business of being an engineer, nor that the quadplex was the only rental property petitioner operated during the year precludes us from so finding. Hazard v. Commissioner,7 T.C. 372 (1946). [5] Therefore, we think that petitioner's loss ought to be treated as a business loss to the extent that the things taken from the quadplex were not personal belongings that petitioner was in the process of moving to Massachusetts. To that extent the aggregate *94 loss in issue should not be subject to the $100 per theft floor of section 165(c)(3). We have no doubt that petitioner did suffer loss as a result of theft. Nevertheless, the question what amount petitioner should be allowed to deduct for such losses is a problematic one. Petitioner has not been able to tell us exactly what was stolen. The only evidence he has offered to substantiate his loss is a "partial list of property stolen" which he submitted to his insurer. The list refers to two items specifically, a water bed and an electric stove. Apart from these, the list provides only the following sketchy descriptions--"tables," "chairs," "kitchen cabinets," "numerous art works such as paintings, ceramics, embroideries," "dozens of gardening tools including electric tools for gardening," and "power tools." The "partial list" indicates neither the fair market value of the items listed, nor petitioner's basis in those items. And petitioner was not able to shed any light on these points in his testimony, except to say that he had been depreciating *95 many of the items that were stolen. It is not clear from the record whether all of the articles stolen were being used by petitioner in his rental business. At trial he said that some of the things were "personal items." To the extent the items stolen were not connected with petitioner's rental business, the aggregate loss in issue is subject to the $100 per theft floor of section 165(c)(3). Apropos of this point, we note that it would be impossible, based on the record, to say how many thefts occurred; things were removed from the quadplex over a period of months, and the identity of the thief or thieves has never been established. Finally there is the question of the security deposit retained by petitioner: if petitioner did not include the amount of this deposit ($160) in the gross rental income he reported for the year in issue, he has effectively been compensated for part of the loss of his property. To that extent he would not be entitled to a loss deduction, by virtue of section 165(a). Given these uncertainties, we think it is reasonable to allow petitioner one-third of the amount he claims as a deduction for loss. Issue 5. The Amount of Petitioner's Gain *96 on the Sale of the Rental Property.
FINDINGS OF FACT In December of 1978, petitioner sold the quadplex in Newport, Rhode Island, for $40,500. His closing costs were $3,780, and his cost basis in the property was $33,000. Sometime prior to the sale, petitioner built a kitchen and a bathroom in one of the apartments that comprised the quadplex. OPINION Along with his return for the year in issue, petitioner filed a Form 2119 (pertaining to the sale or exchange of a personal residence) on which he showed a gain of $220 from the sale of the quadplex. He did not, however, include this gain in his gross income for the year. He neither filed a Schedule D nor reported a capital gain on his Form 1040. Petitioner concedes that the gain he realized on the sale of the quadplex has to be included in his gross income, but the amount of that gain is disputed by the parties. This matter was first raised by respondent at trial; respondent therefore bears the burden of proof. Rule 142(a). Petitioner's cost basis, transaction costs and amount received have all been stipulated; it is the amount of petitioner's adjusted basis that is in dispute here. Petitioner computed the gain shown *97 on his Form 2119 ($220) by subtracting $36,000, which he took for his adjusted basis in the quadplex, from the amount he received on the sale net of his transaction costs. [6] Apparently, he computed his adjusted basis by adding $2,000, representing the cost of capital improvements he made on the property, to a cost basis of $34,000--these figures appear on page 2 of petitioner's Form 2119. It has been stipulated that petitioner's cost basis was $33,000; thus petitioner admits that the figure he used for his costs basis on his Form 2119 is not correct. Nevertheless, he argues that the figure he used as his adjusted basis for determining gain is correct: he says that while he cannot remember exactly how much he spent on the improvements he made, he may well have understated those expenditures by the amount that he overstated his cost basis. [7] Respondent argues that petitioner's adjusted basis for determining gain should be equal to his cost basis ($33,000) on the ground that petitioner can only guess at the amount he spent on improvements. *98 It is true that petitioner has no records of expenditures for capital improvements, but it has been stipulated that such improvements were made. Clearly, respondent cannot carry his burden of proving that petitioner's adjusted basis was $33,000 simply by pointing out that petitioner cannot prove precisely how much more it was. Based on the entire record, we believe that the cost of his improvements was at least $2,000. Therefore, we hold that petitioner's adjusted basis in the quadplex was $33,900--his cost, $33,000, plus $2,000 for capital improvements, minus $1,100 allowed depreciation. [8] This means that petitioner realized a capital gain of $2,820 which must be included in his gross income for the year in issue. Decision will be entered under Rule 155.
Footnotes
1. All references to authority designated by rule number are to the Tax Court Rules of Practice and Procedure.↩
2. All references to authority designated by section number are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.↩
3. Merlino v. Commissioner,T.C. Memo. 1980-112↩.
4. We note that if we are convinced that a deductible expenditure has been made in a case in which there is insufficient evidence as to the exact amount of that expenditure, we may estimate the amount on a basis that bears heavily on the party who has failed to keep adequate records. Cohan v. Commissioner,39 F.2d 540, 544 (2d Cir. 1930), affg. in part and revg. in part 11 B.T.A. 743 (1928); see Browne v. Commissioner,73 T.C. 723, 729↩ (1980).
5. Cf. Stratton v. Commissioner,T.C. Memo. 1958-214; Wasnok v. Commissioner,T.C. Memo. 1971-6↩.
6. On his Form 2119, petitioner showed an amount received of $40,000, rather than the $40,500 that has now been stipulated.↩
7. The basis of property is adjusted for any expenditure properly chargeable to capital account, including the cost of improvements made to the property. Sec. 1.1016-2(a), Income Tax Regs.↩
8. Petitioner claimed a depreciation deduction in the amount of $1,100 on his return for the year in issue. As we noted above, respondent has conceded that petitioner is entitled to this deduction. Sec. 1016(a)(2) requires an adjustment to basis for depreciation deductions allowed.↩